UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ARROW ELECTRONICS, INC., § | |
| § | |
| Plaintiff, § | |
| v. § | CIVIL ACTION NO. H-09-cv-0820 |
| § | |
| DANIEL LEE RITZ, JR., § | |
| § | |
| Defendant. § | |

## MEMORANDUM AND ORDER

### I. BACKGROUND

This case involves Defendant Daniel Lee Ritz, Jr.'s ("Ritz") alleged breach of a settlement agreement ("the Settlement Agreement") that he entered into with Plaintiff Arrow Electronics, Inc. ("Arrow").[1] On June 28, 2007, Arrow commenced a lawsuit against Ritz in the United States District Court for the Southern District of Texas, Houston Division, Civil Action No. 4:07:-cv-2106, before the Honorable Lee H. Rosenthal ("Underlying Litigation"). (Compl. ¶ 5.) Arrow and Ritz entered into the Settlement Agreement on September 11, 2007. (Compl. ¶ 7; Pl.'s Mtn., Ex. A.) As a result of the Settlement Agreement, the Underlying Litigation was closed on September 18, 2007. (Compl. ¶ 8.)

Pursuant to the Settlement Agreement, Ritz acknowledged that he owes Arrow $133,502.17; however, Arrow agreed to accept $126,827.58 as final settlement of Ritz's debt to Arrow ("Settlement Amount"). (Pl.'s Mtn., Ex. A ¶ 1.) Arrow thus agreed to compromise the debt by $6,675.13. Per the terms of the Settlement Agreement, Ritz

---

[1] These facts are undisputed or, for the purposes of this Motion only, presented in the light most favorable to Ritz.

agreed to make six $5000.00 payments to Arrow, with the last payment due on March 3, 2008, and a balloon payment of $96,827.58 due on April 1, 2008. (*Id.*) As long as Ritz made the scheduled payments to Arrow, he was not required to pay any interest. (*Id.*)

Contemporaneously with the Settlement Agreement, Ritz executed a Verified Confession and Stipulation to Entry of Judgment and a Stipulated Final Judgment ("the Confession of Judgment Documentation"). (Pls. Mtn., Ex. B-C.) The Confession of Judgment Documentation clearly provides that, if Ritz defaults in his obligations under the Settlement Agreement, Arrow may file the Confession of Judgment Documentation with the Court, and that final judgment may be entered against Ritz for the Settlement Amount, minus any payments made by Ritz pursuant to the Settlement Agreement, plus interest on the outstanding principal accruing at 6% per annum from the date of the Settlement Agreement, plus reasonable attorney's fees, including time spent negotiating and drafting the Settlement Agreement and the Confession of Judgment Documentation. (Pls. Mtn., Ex. A. ¶ 2; Ex. B ¶ 3.) Ritz further agreed that all interest and attorney's fees added to the Stipulated Final Judgment shall be set forth in an affidavit from Arrow. (Pls. Mtn., Ex. B ¶ 3.) Ritz also waived any defenses, including notice, or offsets that he might have to a final and binding judgment and order and agreed not to contest any final and binding judgment. (*Id.*)

On January 24, 2008, Ritz requested, and Arrow agreed, to modify the terms of the Settlement Agreement to provide that the balloon payment due on April 1, 2008 be reduced to $10,000, and that it would be followed by a final payment in the amount of $86,800, due on May 1, 2008. (Pls. Mtn., Ex. D.) Ritz breached the Settlement Agreement by failing to make the $86,800 payment due on May 1, 2008. (Christensen

Aff. ¶ 9, Pls. Mtn., Ex. E.) On May 2, 2008, Arrow agreed to modify the Settlement Agreement for a second time to allow two payments of $10,000 to be due on May 2, 2008 and June 1, 2008 and a third payment of $69,600 due on July 1, 2008, to include a $2,800 premium in consideration for Arrow's agreement to extend the due dates. No other changes were made to the Settlement Agreement. (Pls. Mtn., Ex. F.) Ritz breached the Settlement Agreement by failing or refusing to make the $69,600 payment due on July 1, 2008. (Christensen Aff. ¶ 11.)

On July 8, 2007, Arrow agreed to modify the terms of the Settlement Agreement for the third time to provide for a final payment in the amount of $72,600 on August 1, 2008, which included a $3000.00 premium in consideration for Arrow's agreement to modify the Settlement Agreement. (Pls. Mtn., Ex. G.) Ritz failed to make the $72,600 payment due on August 1, 2008. (Christensen Aff. ¶ 13.) On August 6, 2008, again at Ritz's request, Arrow agreed to modify the terms of the Settlement Agreement for the fourth time to allow two payments of $35,000, due on August 15, 2008 and September 1, 2008. (Pls. Mtn., Ex. H.) Ritz failed to make the August 15 payment. (Christensen Aff. ¶ 15.)

On September 3, 2008, the parties again agreed to modify the Settlement Agreement, for the fifth time, to include two payments of $10,000, in certified funds, to be due on September 3 and September 5, and payments of $10,000, in certified funds, each Thursday thereafter until the balance of the debt was discharged. (Pls. Mtn., Ex. I.) Ritz made the September 3 payment on September 5, but he failed to make the September 5 payment. (Christensen Aff. ¶ 7.) On September 26, 2008, Arrow agreed to modify the Settlement Agreement for a sixth time to allow Ritz to make a $10,000 payment on

3

September 29, 2008 and a payment of $5,000.00, in certified funds, on October 3, 2008, to be followed by payments of $5000.00 each Friday thereafter until the debt was discharged. (Pls. Mtn., Ex. J.) Ritz made the September 29 payment but failed to make the $5000 payments on October 3, 10, and 17. (Christensen Aff. ¶ 19.)

On October 20, 2008, Arrow agreed to modify the Settlement Agreement for the seventh and final time, as follows: Ritz was to make two payments of $10,000, in certified funds, on October 21 and 22, and payments of $5000.00 in certified funds due each Friday thereafter until the balance of the debt was retired as required by the September 26, 2008 modification. (Pls. Mtn., Ex. K.) Arrow indicated that if Ritz failed to make the October 21 and 22 payments, it would take immediate action to enforce the Confession of Judgment Documentation and that it would not agree to any additional extensions of the payment schedule. (*Id.*) Ritz failed to make those payments. (Christensen Aff. ¶ 21.)

Arrow filed suit, seeking $83,088.91 from Ritz, which is the principal amount of the loan excluding the premiums, $126,827.58, less the payment of $80,000 Ritz made, plus interest in the amount of $4549.33, and $31,712.00 in attorney's fees. Arrow now seeks summary judgment. This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

II.   ANALYSIS

A. Standard

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. FED. R. CIV. P. 56(c). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quotations omitted). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). The Court views all evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Id.* Hearsay, conclusory allegations, unsubstantiated assertions, and unsupported speculation are not competent summary judgment evidence. F.R.C.P. 56(e)(1); *See, e.g., Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996), *McIntosh v. Partridge*, 540 F.3d 315, 322 (5th Cir. 2008); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1975 (5th Cir. 1994) (noting that a non-movant's burden is "not satisfied with 'some metaphysical doubt as to the material facts'") (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

### B. Usury

Ritz does not dispute that he entered into the Settlement Agreement, that he is indebted to Arrow in the amount of $126,827.58, less the payments made, and that he failed to make the scheduled payments to Arrow. His only argument is that the premiums required, in the amounts of $2800.00 and $3000.00, are usurious. Notably, Arrow is no longer seeking the premiums

Arrow argues that the premiums are not interest but rather consideration for its willingness to let Ritz extend payment due dates and to partially offset the cost of administering the loan. Arrow contends that it agreed to resolve Ritz's debt at

approximately $6000.00 less than the debt actually owed and to allow Ritz to make monthly payments in the nominal amount of $5000.00, interest free, so that Ritz would make the final balloon payment at the date agreed upon. Instead, Arrow argues, Ritz constantly made late payments, and at least one of his checks bounced, which made the loan costly to administer.

Even if the premiums were treated as interest, Arrow continues, they are not usurious when added to the Settlement Agreement's default interest rate of 6% per annum. Under New York usury laws, the current maximum interest rate allowed is 16%.[2] N.Y. BANKING LAW § 14(a) (2008). The combined one-time premium charges represent 8.3% of the amount outstanding as of August 2008. According to Arrow, when combined with the default interest chargers, the annual interest rate is therefore 14.3%, which is below the statutory limit. In the alternative, if the Court does find the premiums to be usurious, Arrow argues that Ritz is still liable for the underlying principal.

In support of its argument that Ritz is still liable for the underlying debt, regardless of whether the premiums were usurious, Arrow cites *Eikenberry v. Adirondack Spring Water Co.*, 480 N.E.2d 70 (N.Y. 1985). In *Eikenberry*, the Court of Appeals found that while the parties' original agreement was not usurious, subsequent agreements entered into by the parties when the defendant defaulted were void because of usurious interest rates. Regardless, the Court of Appeals held that just because the subsequent agreements "may be unenforceable against the individual defendants does not mean that their underlying debt is extinguished." *Eikenberry*, 480 N.E.2d at 73 (citations omitted). The Court of Appeals further explained that:

---

[2] The parties do not dispute that, per the terms of the Settlement Agreement, New York law applies. (Pls. Mtn., Ex. A ¶ 17.)

> To the contrary, "[w]hen a contract for money, legal and innocent in itself, is once made and consummated, it cannot be made usurious and illegal by any subsequent transactions of the parties. These subsequent transactions may of themselves be illegal, and forbidden by law, but they cannot impart the taint and the consequences of usury to an antecedent agreement, fair, and just, and upright in itself. If the obligation under it is to pay a debt, the obligation, with the legal rights resulting from it, remain in all their force, and cannot be discharged by ingrafting upon it some subsequent agreement obnoxious to the charge of usury.

*Id.* at 74 (citing *Lesley v. Johnson*, 41 Barb. 359, 362). The Appellate Division applied this same reasoning in a more recent case, *Brest v. Kleidman*, 751 N.Y.S.2d 473 (N.Y. App. Div. 2002). The trial court held that the parties' original agreement was valid even though two subsequent agreements were declared void for charging civilly usurious rates of interest. The Appellate Division affirmed, noting that [t]he principle that an obligation valid at its inception is not invalidated or tainted with usury by a subsequent usurious transaction applies regardless of whether the subsequent transaction is civilly or criminally usurious." *Brest*, 751 N.Y.S.2d at 473.

Ritz argues that the Settlement Agreement was modified by the subsequent agreements such that there is a fact issue as to which of the seven agreements should be enforced. According to Ritz, the addition of the usurious premiums created a new contract. He relies on *Lesley v. Johnson*, which was cited by the *Eikenberry* court. In *Lesley*, the New York Superior Court modified the rule that the original agreement is not disturbed by later usurious agreements, noting that "[i]f the subsequent agreement has the effect to annul and rescind the antecedent contract, that is quite another thing." *Lesley*, 41 Barb. at 362. Ritz does not argue, however, that the modification agreements contained language rescinding the original Settlement Agreement or that they somehow contradict the Settlement Agreement. As Arrow points out, each modification agreement contained language stating that "no other changes had been agreed to" with respect to the

7

Settlement Agreement—instead, the agreements merely modified the payment schedule.[3] Ritz has not alleged facts suggesting that this language is ambiguous. The Court therefore finds, as a matter of law, that the Settlement Agreement is enforceable.[4] Ritz does not contest that, under the terms of the Settlement Agreement, Arrow is entitled to interest in the amount of 6% per annum.

### C. Attorney's Fees

Arrow has submitted an Affidavit in support of attorney's fees which it is entitled to according to the terms of the Settlement Agreement. Ritz argues that the amount of fees Arrow seeks, $31,712.00, is unreasonably high. As Arrow points out in its Reply, Ritz does not specify why these fees are excessive. Arrow notes that the claimed fees span nearly two years and include researching, drafting, and filing a complaint which was later voluntarily dismissed due to the parties' settlement, negotiating and drafting the Settlement Agreement and the Confession of Judgment Documentation, administering the Settlement Agreement for two years, dealing with Ritz's failure to make timely payments, negotiating and drafting the seven modifications, drafting and filing a request for an entry of the stipulated final judgment, drafting, filing, and serving the instant Complaint, conducting an attorney's planning meeting, drafting a discovery plan, and researching and drafting Plaintiff's Motion for Summary Judgment. Because Ritz has only offered conclusory statements regarding the reasonableness of these fees, the Court holds, as a matter of law, that Arrow is entitled to attorney's fees in the amount of $31,712.00.

---

[3] The Court notes that the final modification (Pls. Mtn., Ex. K) did not contain this language. Ritz has introduced no evidence, however, indicating that the parties intended this modification to rescind the Settlement Agreement.

[4] Ritz further argues that he did not waive his usury defense because of duress. Because the Court has entertained his defense and found it meritless, it will not address the issue of waiver.

### III. CONCLUSION

For these reasons, Arrow's Motion for Summary Judgment is **GRANTED**.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the 2nd day of September, 2009.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

TO ENSURE PROPER NOTICE, EACH PARTY WHO RECEIVES
THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY
OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH
THEY MAY HAVE BEEN SENT ONE BY THE COURT.